[Nos. G000831, G000935. Fourth Dist., Div. Three. Nov. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MACIEL et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

* Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts III-VIII.

## COUNSEL

Handy Horiye and Robert Philip App, under appointments by the Court of Appeal, Earley & Baruch and Jack M. Earley, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Frederick R. Millar, Jr., and Tim J. Nader, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—Robert Maciel, Vincent Maciel and Louis Peralta were convicted in a jury trial of one count of first degree murder (Pen. Code, § 187),[1] one count of attempted murder (§§ 664/187) and one count of assault with a deadly weapon (§ 245, subd.(a)), a lesser offense of count III, which alleged attempted murder. The jury found the armed allegation (§ 12022, subd. (a)) true as to each defendant. The defendants were sentenced to state prison for 25 years to life.

Each defendant asserts *Beeman*[2] error. In addition, Robert Maciel alleges the trial court erred in refusing to admit evidence of a polygraph examination and in failing to exclude a codefendant's statements. (*People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].) He also maintains his sentence is cruel and unusual punishment. (*People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697].)

---

[1] All statutory references are to the Penal Code unless otherwise specified.
[2] *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

Louis Peralta claims the trial court erred in refusing to reduce the offense from first degree murder to second degree. Vincent Maciel maintains the trial court erred in admitting prior statements for impeachment.[3]

### FACTS

Robert Maciel and Louis Peralta reported to the Huntington Beach Police Department that someone had thrown a bottle through Peralta's Koledo Street apartment window. Robert said the suspects were in a white 1965-1966 Chevy with unique taillights. Peralta did not say anything but nodded his head up and down as Robert related the events to the officer. After being told there was not much chance of locating the suspects without a license plate number, Robert said, "That's okay, I'll find the car and we'll kill them."

Later that same day, Jose Cadena was driving a white Pontiac down an alley off Koledo Street. Manuel O'Campo, the homicide victim, was in the passenger seat and Gustavo Cordero was in the rear seat. After several men stepped in front of the car, Cadena stopped. The men began hitting the car with pipes and bats, breaking the car's windows. Cadena was hit on the head. The occupants exited the car and attempted to escape, but someone threw a baseball bat and one of the men was struck in the leg.

Robert passed a rifle from the passenger side of the car to Vincent Maciel who was standing on the driver's side from which several shots were fired. Cordero was hit twice in the right arm and O'Campo was struck two times in the back and once in the buttocks.

Vincent and his wife fled on foot but were stopped by Officer Hauser on Ash Street. Vincent gave the officer a false name. A broken baseball bat was found near where Vincent had been stopped.

Vincent testified. He admitted hitting Cadena with his fist and breaking the car's headlights with a pipe. He said Robert was at the scene and stood on the passenger's side of the car. He also admitted the rifle used in the killing was his but said he had left it several weeks earlier at Robert's apartment. He denied he was the shooter. He said the shooter had given it to him and he hid it.

Witnesses identified Robert as the person who passed a rifle to Peralta. Peralta was also identified as the shooter. Vincent's fingerprints were found

---

[3] We requested additional briefing on the issue of criminal liability predicated on conspiracy and aiding and abetting theories where the underlying crime was an assault.

on the rifle and on the windshield on the driver's side of the car. Robert's palm print was found on the roof on the passenger's side of the car. Shell casings found at the scene matched those test fired from Vincent's rifle. Brian Dodd, who was in the Orange County Jail at the same time as Peralta, testified Peralta admitted firing the rifle.

## DISCUSSION

### I

 Each defendant asserts prejudicial error in the trial court's giving of CALJIC Nos. 3.00 and 3.01. Those instructions were condemned by the Supreme Court in *People* v. *Beeman, supra,* 35 Cal.3d 547 because they fail to properly define the intent required of an aider and abettor. Respondent concedes *Beeman* error but argues, however, the defendants, in light of the jury's determination the murder of O'Campo was first degree based upon a lying in wait theory, could not have been prejudiced.

██ ██ ██ ██ In *Beeman,* the Supreme Court held the standard aiding and abetting instructions failed to limit liability to defendants who shared the intent of the perpetrator.[4] There is no doubt the aiding and abetting instructions read to the jury were erroneous under *Beeman.*

We therefore consider whether the error is prejudicial. *Beeman* teaches that to "share" the perpetrator's intent means there is a knowing intent to assist the perpetrator's commission of the target crime. Once that intent is formed, the liability of an aider and abettor "extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560.)

In *People* v. *Croy* (1985) 41 Cal.3d 1 [221 Cal.Rptr. 592, 710 P.2d 392], the court explained vicarious liability in this fashion: "It follows that a defendant whose liability is predicated on his status as an aider and abettor *need not have intended to encourage or facilitate the particular offense ultimately committed* by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, *are sufficient to impose liability on him for any reasonably forseeable offense committed as a consequence by the perpetrator.* It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman*

---

[4]The present case was tried almost one year prior to *Beeman,* but the rule is retroactive. (*People* v. *Croy, supra,* 41 Cal.3d at p. 12.)

holds must be found by the jury. [Citation.]" (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5, italics added.)

Accordingly, defendants' argument must be rejected. It is immaterial who actually pulled the trigger firing the fatal shots. The defendants were armed with a baseball bat and a metal pipe from a barbell set. They actively assaulted the car and its occupants. There is evidence of each defendant's intention to be an active participant in the assault. It is not required that each defendant harbor the specific intent to kill or that each defendant intended to facilitate the murder and attempted murder (the "ultimately committed" offenses) which were foreseeable consequences of their assault.

Additionally, we note the jury found the murder was first degree because it was committed by lying in wait. This required the jury to find an "intentional infliction . . . of bodily harm involving a high degree of probability that it will result in death . . . ." (CALJIC No. 8.25.) During deliberations the jury questioned whether a murder which is a natural and probable consequence of lying in wait was first degree even though the murder may not have been intended. The court directed the jury, ". . . [t]hey do have to have a certain state of mind. They have to intend either to do bodily injury or to kill." It then reread the instructions defining murder, malice, and lying in wait. The court said, "To constitute murder by means of lying in wait there must be an [*sic*] addition to the aforesaid, conduct by the defendant or defendants, an intentional infliction upon the person killed of bodily harm involving a high degree of probability that it will result in death and which shows a wanton disregard for human life." The court concluded by saying, "So getting back to the answer to your question, if you find that there was lying in wait in the minds of the persons lying in wait who ultimately commit the offense, there has to be an intent to commit bodily injury or an intent to kill."

In *People* v. *Croy, supra,* 41 Cal.3d 1, the court held *Beeman* error is not reversible where the reviewing court can "determine that the *Beeman* error could not possibly have affected the verdict—i.e., that no reasonable trier of fact, having actually found the requisite knowledge, could at the same time have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime." (*Id.,* at p. 14.) Here, it is clear the jury had to have found, at a minimum, each defendant's intent to do bodily harm to the occupants of the car before it could find lying in wait. It could not have been misled by the giving of the *Beeman* instruction.

Finally, the jury was correctly instructed on the People's use of conspiracy as a theory of liability.[5] Under the conspiracy instruction the jury had to determine only if the defendants conspired to assault the occupants of the white car. If so, then each defendant is liable for the "natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560.) It is apparent from the jury's finding of lying in wait, it found the defendants were together prior to the attack, and each intended to do bodily harm to the occupants of the car, i.e., a conspiracy existed. Each defendant, as an active participant in the conspiracy to assault the occupants of the car, is liable for the murder of O'Campo, a natural and probable consequence of their violent attack with deadly weapons. The giving of the erroneous aiding and abetting instruction was not prejudicial.

## II

 The next question presented is whether first degree murder may be based upon conspiracy and lying in wait theories where the underlying crime is an assault with a deadly weapon. Appellants maintain conspiratorial liability under these theories violates the principle of *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]. We disagree.

The Supreme Court, in *Ireland,* held the felony-murder instruction was improper when it was based upon a felony which is an integral part of the homicide. There, as here, the felony was an assault with a deadly weapon. However, this is where the similarities cease. The People here did not rely upon a felony-murder theory and the jury was not so instructed. We have found no case which has expanded the *Ireland* holding to conspiratorial liability.

 A defendant can be found liable for the natural and probable consequences of the acts he or she aids and abets and for the natural and probable consequences of any conspiracy of which he or she is a part. (*People* v. *Croy, supra,* 41 Cal.3d 1; *People* v. *Beeman, supra,* 35 Cal.3d 547.) *Beeman* and *Croy* require a holding that a coconspirator or an aider and abettor is liable not only for those crimes committed by a cofelon which he intended or agreed to facilitate but also for any additional crimes which are reasonably foreseeable. We recognized this in *People* v. *Garewal* (1985) 173 Cal.App.3d 285, 302 [218 Cal.Rptr. 690], where we concluded: "[T]he clear thrust of

---

[5] We also note Peralta was present 19 hours earlier when Robert told the police he would find the car and kill the occupants. Clearly, Peralta was aware of Robert's stated intent. He acted in concert with Robert and Vincent in a violent assault upon the very people Robert said he would locate and kill.

*Beeman* is to contain the reach of vicarious criminal responsibility of conspirators to the natural and reasonable consequences of the conspiracy."

Division One of this court addressed the issue in *People* v. *Luparello* (1986) 187 Cal.App.3d 410, 435-442 [231 Cal.Rptr. 832]. Luparello asserted the conspiracy instruction, CALJIC No. 6.11, is the functional equivalent of the felony-murder instruction discussed in *Ireland*. Luparello sought information as to the location of his estranged girlfriend and hired several persons to obtain information from the victim as to her location. Luparello's rifle was loaded by one of the men on one occasion but left behind when the first attempt was made to contact the victim. The plan was to "thump" the victim and Luparello remarked he wanted the information at any cost. When the men went to the victim's home the plan was to lure him out of the house and beat him. That plan failed and three days later Luparello and two of the men he hired returned to the victim's home and tricked him into exiting. Someone in or near one of the men's car fired six shots killing the victim.

After reviewing and contrasting the two theories and considering the most recent statement of our Supreme Court regarding conspiratorial liability in *People* v. *Croy, supra,* 41 Cal.3d 1, the *Luparello* court concluded at page 441, ". . . we find the conspiracy and aiding and abetting theories proffered here do not suffer the theoretical infirmities of which Luparello complains . . . . [E]ach provides a sound basis to derive Luparello's criminal responsibility for first degree murder."

The facts of the present case lead to the same conclusion the court reached in *Luparello*. The conspiracy was to assault the occupants of the white car, not as appellants assert to merely "thrash" the car. The jury could not have found only the latter. It was instructed it could not find the defendants guilty unless it found they intended to do *bodily harm* to the occupants of the car. The defendants armed themselves with deadly weapons including a rifle. All three defendants were observed with the rifle: Robert handed it to Vincent and Peralta was identified as the shooter and made jailhouse statements claiming he was the shooter. Their actions prior to the shooting were sufficient to support the jury's conclusion of lying in wait. The evidence in this case provides more than an adequate basis for criminal responsibility for first degree murder.

III-VIII*

* See footnote *ante,* page 1042.

Judgment affirmed.

Wallin, Acting P. J., and Crosby, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 16, 1988.