[No. B117926. Second Dist., Div. Two. Aug. 17, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL BAKER et al., Defendants and Appellants.

## COUNSEL

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant Michael Baker.

Marilyn S. White-Redmond, under appointment by the Court of Appeal, for Defendant and Appellant Christopher Paonessa.

Bruce C. Hill for Defendant and Appellant Dino Riggio.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Scott A. Taryle and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Michael Baker, Christopher Paonessa, and Dino Riggio appeal from judgments entered against them following their convictions by jury verdict in the murder of Jason Shaw and the attempted murder of Danny Parkison. Baker was convicted of murder (count I), attempted murder (count II), conspiracy to commit assault with a deadly weapon (count V), and residential burglary (count VI). The jury found that the murder and burglary were in the first degree, that the allegations of personal use of a knife (counts I and II) and infliction of great bodily injury (count II) were true, and that the attempted murder was willful, deliberate, and premeditated. Paonessa was found guilty of the same counts. The jury found that the murder and the burglary were in the first degree, that the allegations of personal use of a knife (count II) and infliction of great bodily injury (count II) were true, and that the attempted murder was willful, deliberate, and premeditated. The jury found Riggio guilty of counts I, V, and VI, as well as assault with a deadly weapon (count IV). The jury found the murder to be in the second degree and the burglary in the first degree.

All three appellants raise instructional error. They contend that an erroneous jury instruction misstated the felony-murder rule and that the trial court

erred in failing to instruct on lesser included offenses and self-defense. In addition, Baker asserts that his Sixth Amendment right to counsel was abridged by his attorney's concession of his guilt of attempted murder. Paonessa avers that he was prejudiced by Baker's counsel's concession, that the admission of Paonessa's statements to police violated his rights under the Fifth Amendment, and that the trial court committed reversible error when it excluded exculpatory evidence offered by Paonessa. Riggio contends that his indeterminate sentence of 15 years to life constitutes cruel and unusual punishment.

### Procedural and Factual Background

Appellants were charged in a six-count indictment with murder (count I), attempted murder (count II), assault with a deadly weapon (count IV), conspiracy to commit assault with a deadly weapon (count V), and residential burglary (count VI). Five other defendants were also named in the indictment. They were not tried with appellants and are not parties to this appeal. Count III applied only to one of the five codefendants. The indictment alleged that Baker personally used a knife (counts I and II) and personally inflicted great bodily injury (counts II and IV). It alleged that Paonessa personally used a knife (counts II and IV). Appellants pleaded not guilty.

Following their convictions, Baker was sentenced to state prison for consecutive terms of twenty-five years to life (count I), life with the possibility of parole (count II), one year for personal use of a knife (count I), and three years for infliction of great bodily injury (count II). The court imposed and stayed one year for personal use of a knife (count II), three years (count V), and four years (count VI). Paonessa was sentenced to consecutive terms of 25 years to life (count I), life with the possibility of parole (count II), and 3 years for infliction of great bodily injury (count II). The court imposed but stayed one year for knife use (count II), three years (count V), and four years (count VI). Riggio was sentenced to state prison for 15 years to life (count I). The court imposed, but stayed three years (count V) and four years (count VI).

The evidence, viewed in the light most favorable to the judgment, shows the following. Jason Shaw and his roommates held a party on March 1, 1997. Baker arrived at the party and refused to pay the admission charge. He was nevertheless allowed to attend. Baker later argued with Shaw and grabbed him by the throat, however, and Shaw asked Baker to leave. Some of the other partygoers then beat Baker, giving him a black eye. Baker discovered that his pager was missing and left Shaw's home after threatening revenge.

Baker returned with Paonessa, Riggio, and eight others. About 1:30 a.m., Baker and the others burst into Shaw's home, armed with two knives, pieces of a steering wheel locking device, and wooden gardening stakes. Baker, Paonessa, and one or two of the others found Shaw and some of his friends in Shaw's bedroom. Shaw tried to defend himself by swinging a baseball bat at Baker. Baker stabbed Shaw twice, killing him. Baker also stabbed Parkison, who tried to help defend Shaw. Parkison sustained life-threatening wounds.

## DISCUSSION

### I. *Instructions regarding felony murder*

■ Baker and Paonessa contend that the instruction presented to the jury on the theory of conspiracy felony murder was legally insufficient. They urge that conspiracy felony murder applies only to conspiracies to commit the offenses listed in section 189 of the Penal Code,[1] and that assault with a deadly weapon is not one of the listed offenses. They also contend that under the merger doctrine stated in *People* v. *Ireland* (1969) 70 Cal.2d 522, 538 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], felony murder may not be based upon an underlying felony assault conspiracy. We agree, and will reverse.

The trial court instructed the jury with CALJIC No. 8.26 as follows: "If a number of persons conspire together to commit assault with a deadly weapon or by means of force likely to produce great bodily injury, and if the life of another person is taken by one or more of them in furtherance of the common design, and if the killing is done to further that common purpose or is an ordinary and probable result of the pursuit of that purpose, all of the co-conspirators are equally guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental." The jury was also instructed on first degree murder based upon premeditation, second degree murder, aiding and abetting, and conspiracy.

The prosecution stated during closing argument, "The second way we arrive at murder in our case is via the conspiracy theory. . . . [¶] Now, under this theory of murder, ladies and gentlemen, there's no requirement of malice or any intent to kill. The only intent required, again, is the intent to commit the assault. . . . [¶] And I can't repeat that enough. Doesn't mean they had to intend to kill anyone. Doesn't matter who actually did the stabbing. [¶] So as you can see, both under the first theory [premeditated murder] I discussed with you, and under the conspiracy murder theory we have arrived at first-degree murder."

---

[1] All statutory references are to the Penal Code, unless otherwise stated.

The only possible predicate offenses for first degree murder are those listed in section 189. (*People* v. *Bigelow* (1984) 37 Cal.3d 731, 750 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723].) Section 189 classifies as murder in the first degree: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree. All other kinds of murders are of the second degree." Section 189 does not list either the crime of conspiracy or of assault with a deadly weapon. (See *People* v. *Barnett* (1998) 17 Cal.4th 1044, 1154 [74 Cal.Rptr.2d 121, 954 P.2d 384] [court assumes it would be error to obtain a first degree murder conviction based on conspiracy to commit a nonenumerated felony or on an "impossible" felony, such as assault with a deadly weapon].)

The felony-murder rule imputes the requisite malice for a second degree murder conviction to those who commit a homicide during the perpetration of a felony which is not an enumerated felony, but is one inherently dangerous to human life. Assuming conspiracy to commit assault with a deadly weapon is a felony inherently dangerous to human life, the felony-murder rule would at most support a finding of second degree murder in the present case. (See *People* v. *Flores* (1992) 7 Cal.App.4th 1350, 1362 [9 Cal.Rptr.2d 754] [court instructed on conspiracy felony murder based on assault with a deadly weapon; appellate court found nonprejudicial error under *People* v. *Ireland, supra,* 70 Cal.2d at p. 538].)

*People* v. *Maciel* (1987) 199 Cal.App.3d 1042 [248 Cal.Rptr. 883] and *People* v. *Luparello* (1986) 187 Cal.App.3d 410 [231 Cal.Rptr. 832], relied upon by respondent, are distinguishable. In each case, the jury found that the murder was committed as a result of one or more conspirators having lain in wait. Under section 189, such a circumstance equates the crime to first degree murder as to the perpetrator. Therefore, pursuant to section 182, both defendant Maciel and defendant Luparello were liable to the same extent and degree as their respective coconspirators.[2]

To the extent *Maciel* or *Luparello* may be read to elevate *any* death arising from a conspiracy to commit an assault with a deadly weapon into the

---

[2]The relevant portion of section 182 provides that two or more people conspiring to commit a felony "shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony. If the felony is one for which different punishments are prescribed

equivalent of felony murder, we disagree. It is the function of the Legislature, not the courts, to establish degrees of crimes and punishment. Section 189 defines what is and what is not first degree murder. As mentioned, neither assault with a deadly weapon nor conspiracy to commit such an act is listed by the Legislature as being the type of offense that will automatically result in a murder perpetrated in the commission thereof as being of the first degree.

Accordingly, the only way a conspiracy to commit an assault with a deadly weapon may result in a first degree murder is if a conspirator is guilty of first degree murder as set forth in section 189. In the present case, the murder was not committed by use of an explosive device, armor-piercing ammunition, poison, lying in wait, or torture. Nor was it committed in the course of arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, various sex crimes, or shooting from a vehicle.[3] Therefore, the only possibility of a "fit" under section 189 is if one of the conspirators was found to have committed a "willful, deliberate, and premeditated murder." Any instruction to the contrary was error.

The instruction given in this case faces a second legal hurdle. The effect of the instruction was to relieve the jury of the necessity of finding malice aforethought if it found that the homicide was a direct result of the commission of a conspiracy to commit assault with a dangerous weapon. (See *People* v. *Ireland, supra,* 70 Cal.2d at p. 538.) In *People* v. *Ireland,* our Supreme Court held that a felony-murder theory cannot be based upon a felony which is an integral part of the homicide, in that case assault with a dangerous weapon and second degree murder, because such a theory would preclude the jury from considering malice aforethought in all cases where the homicide has been committed as a result of a felonious assault. There, the defendant was also the perpetrator, and no conspiracy was alleged. In *People* v. *Hansen* (1994) 9 Cal.4th 300, 315 [36 Cal.Rptr.2d 609, 885 P.2d 1022], our Supreme Court rejected the "integral part of the homicide" test, and replaced it with a test which focuses upon whether the use of the underlying inherently dangerous felony as a predicate felony will elevate all felonious assaults to murder or otherwise subvert the legislative intent. It found that use of willful discharge of a firearm at an inhabited dwelling as a predicate felony for second degree felony murder did not subvert the legislative intent to provide a gradation of homicide offenses based upon the existence of malice.

for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony [the] defendant conspired to commit."

[3]As will be discussed next, our Supreme Court has precluded the extension of the felony-murder concept to a death arising from a burglary where, as here, the intent of the burglary was to commit an assault. (*People* v. *Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22].)

Respondent urges that the logical and legal impediments to criminal liability found in *Ireland* do not apply with respect to limiting a conspirator's liability. We disagree where the instruction extends to perpetrator liability. This case is analogous to *People* v. *Wilson, supra,* 1 Cal.3d 431. In *Wilson,* our Supreme Court held that the *Ireland* reasoning applies to instructions on first degree felony murder based upon burglary where the intended felony is assault with a deadly weapon. The court reasoned that the only additional element is the site of the assault. The court concluded that where the entry would be nonfelonious but for the intent to commit the assault, and the assault is an integral part of the homicide, utilization of the felony-murder rule extends that doctrine " 'beyond any rational function that it is designed to serve.' " (*People* v. *Wilson, supra,* at p. 440.)

Where, as here, a conspiracy to commit an assault with a deadly weapon is the target offense of the felony-murder instruction, the same logic applies. The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit. (*People* v. *Wilson, supra,* 1 Cal.3d at p. 440.) A person who enters a conspiracy to commit assault with a deadly weapon, like the person who enters a building with an intent to assault his victim with a deadly weapon, is not deterred by the felony-murder rule. We conclude that on this ground, as well, the court erred in applying the felony-murder rule to a conspiracy to commit assault with a deadly weapon.

## II. *Lesser included offenses*

■ Appellants raise several issues regarding instructions, based upon the underlying notion that the jury should have been given the opportunity to decide whether appellants agreed to and entered Shaw's home with the intent to engage in a fistfight, that is, a simple assault, rather than assault with a deadly weapon or by means of force likely to cause great bodily injury. Appellants urge that the court should have instructed on lesser included offenses of voluntary manslaughter, conspiracy to commit assault, and assault. Simple assault is a misdemeanor, aggravated assault a felony. (See §§ 241, subd. (a), 245, subd. (a)(1).) Thus, the jury could have found that appellants' intent upon entering Shaw's home was not felonious. There was evidence from which a rational jury could conclude that Baker, an acquaintance of Shaw's, returned to Shaw's home to retrieve his pager and at most to engage in a fistfight. If Shaw so believed, then his use of force could be considered excessive, entitling Baker to defend himself. (See *People* v. *Loustaunau* (1986) 181 Cal.App.3d 163, 171 [226 Cal.Rptr. 216]; *People* v. *Gleghorn* (1987) 193 Cal.App.3d 196, 201 [238 Cal.Rptr. 82].)

The jury was instructed on first degree murder (CALJIC No. 8.20), second degree murder (CALJIC No. 8.30), attempted murder (CALJIC Nos. 8.66,

8.67), assault with a deadly weapon or with force likely to cause great bodily injury (CALJIC No. 9.02), burglary (CALJIC No. 14.50), conspiracy to commit assault with a deadly weapon or with force likely to cause great bodily injury (CALJIC No. 6.23), and aider and abettor liability (CALJIC No. 3.01). The court refused to give instructions on self-defense and voluntary manslaughter.[4] In rejecting the requested instructions, the trial court explained, "I just don't see that this is a case involving self-defense at all, or even unreasonable self-defense. I just don't see it as an issue. [¶] We have a bunch of people going into a house, burglarizing the house armed with weapons. They can't therefore, claim that because they're somehow repelled that there is a right of self-defense or defense of others. [¶] I mean, the right of self-defense and defense of others is not available to someone who was the initial aggressor."

A trial court must instruct sua sponte on all lesser included offenses which find substantial support in the evidence. (*People* v. *Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) It must instruct on defenses which are supported by the evidence and which are not inconsistent with the defendant's theory of the case. (See *People* v. *Barton* (1995) 12 Cal.4th 186, 195 [47 Cal.Rptr.2d 569, 906 P.2d 531].) Substantial evidence exists where there is evidence from which a jury composed of reasonable persons could conclude that the defendant was guilty of the lesser crime. (*People* v. *Breverman, supra,* at pp. 162-164.) When assessing the sufficiency of evidence to warrant an instruction, we do not evaluate the credibility of witnesses, a task for the jury. (*Ibid.*)

Evidence regarding appellants' intent was conflicting. Although the trial court's view of the evidence was amply supported, there was also evidence from which a rational jury could conclude that appellants went to Shaw's home, where the party was still in progress, intending only to retrieve Baker's pager and perhaps to engage in a fistfight. Testimony was introduced tending to show that Baker, Paonessa, and Riggio, with others, entered into an agreement to go to Shaw's house to retrieve Baker's pager, which had been lost or taken during the first scuffle at Shaw's house, and to "kick ass" and "jump 'em." Those colloquialisms may be interpreted as

---

[4]Baker requested CALJIC Nos. 5.10 (resisting attempt to commit felony); 5.12 (justifiable homicide in self-defense); 5.13 (justifiable homicide—lawful defense of self or another); 5.15 (charge of murder—burden of proof re justification or excuse); 5.16 (forcible and atrocious crime—defined); 5.32 (use of force in defense of another); 5.42 (resisting an intruder upon one's property); 5.43 (force that may be used in defense of property); 5.50 (self-defense—assailed person need not retreat); 5.51 (self-defense—actual danger not necessary); and 5.54 (self-defense by an aggressor). Paonessa requested CALJIC No. 5.17 (actual but unreasonable belief in the necessity to defend—manslaughter). The defendants joined in each others' requests.

indicating an intent to commit a simple assault, that is, to fight, rather than to commit an assault with a deadly weapon or with deadly force. Paonessa recounted in his recorded statement to the police, which was played to the jury, that he believed the group was going to Shaw's house to retrieve Baker's pager and to allow Baker to talk to Shaw about what had happened. He thought there might be a fight and gave Baker his knife, but told him to use good judgment. Riggio testified in his own defense. He said that he believed the group was going to Shaw's home to retrieve Baker's pager and that he did not know that Baker had a knife. An eyewitness testified that he did not see Baker display a weapon until after Shaw swung the baseball bat at him. The trial court erred in failing to instruct on lesser included offenses.

The failure to instruct had far-ranging ramifications, including influencing whether the killing and knifing were reasonable and natural consequences of the target offense of the conspiracy and whether there should be vicarious liability for the more serious crime. The error thus implicated the convictions of attempted murder, assault with a deadly weapon or by means of force likely to cause great bodily injury, conspiracy to commit assault with a deadly weapon or by means of force likely to cause great bodily injury, and residential burglary. (See *People* v. *Godinez* (1992) 2 Cal.App.4th 492, 504 [3 Cal.Rptr.2d 325] [error for court to instruct jury that homicide is a reasonable and natural consequence of a gang attack].) The error was magnified by the prosecution's closing argument, which emphasized that the attack on Shaw was unprovoked and unjustified.

### III. *Prejudicial error*

█ If an erroneous instruction would permit the jury to convict based on a factually insufficient scenario, a reviewing court will reverse the conviction unless, from the jury's findings, it can determine beyond a reasonable doubt the jury did not in fact rely on the erroneous instruction and factually deficient scenario. (See *People* v. *Aguilar* (1997) 16 Cal.4th 1023, 1034 [68 Cal.Rptr.2d 655, 945 P.2d 1204].) █ In the present case, the felony-murder instruction given would permit the jury to convict the defendants of first degree murder without finding that any of them had the requisite malice aforethought for first degree murder. It thus requires reversal unless it appears from the record beyond a reasonable doubt the jury did not rely on the erroneous instruction.

The record does not support such a conclusion. The prosecution urged the jury that it could find first degree murder based solely on the conspiracy to commit assault with a dangerous weapon. During deliberations, the jury asked the court, "If a number of persons conspire . . . all of the co-conspirators are equally guilty of murder of the first degree, whether the

killing is intentional, unintentional, or accidental. Referring to Count 1 if 1 of the defendants (co-conspirators) is found guilty of 1st degree murder do the other co-conspirators have to be found guilty of first degree murder?" The court replied, "No, because the court cannot and will not tell the jury how to decide any issue. You have all [the] instructions on the law that appl[y] to this case." The jury also asked, "If we return a guilty verdict on Count 5 (conspiracy) for each defendant, are we allowed to return a verdict of guilty or not guilty for each of the defendants on Count 1 (murder in the 1st or 2d degrees)?" The court replied, "Yes."

The jury may well have relied upon the felony-murder conspiracy instruction in convicting Baker and Paonessa. Although it could have found premeditated murder as to Baker, who it found personally used a knife in the murder of Shaw, and conspiracy or aider and abettor liability as to Paonessa, we cannot determine on this record that that is what it did. The jury found Riggio guilty of second degree murder in the killing of Shaw. It is not clear from the record how the jury reached its decision, since the existence of a conspiracy including all three would presumably have resulted in first degree convictions for all. It may be that the jury compromised with regard to Riggio, or that it determined that Riggio was sufficiently less culpable than the others that he should not receive the same degree of blame.

Respondent urges that because the jury found that Baker, as to count II, attempted the murder of Parkison "willfully, deliberately, and with premeditation," it necessarily found that Baker murdered Shaw with premeditation. There are differences between the two, however. Shaw was attacked earlier and had armed himself with a baseball bat. Parkison apparently had not armed himself. (Cf. *People* v. *Flores*, *supra*, 7 Cal.App.4th at p. 1361 [inconceivable the jury would find an intention to kill only the victims who survived, but not the one who died].) Unfortunately, the jury was not required to decide the issue.

The failure to instruct on lesser included offenses was prejudicial under the standard stated in *People* v. *Breverman*, *supra*, 19 Cal.4th at page 165. It is reasonably probable that the jury would have reached a different verdict if it had known of the option to convict appellants of lesser included offenses. We conclude that in light of the seriousness of the instructional errors which occurred, the convictions of all three appellants must be reversed.

## IV. *Remaining contentions*

Since we reverse, we need not reach the remaining issues raised by the parties.

DISPOSITION

The judgments of conviction are reversed. The matter is remanded for retrial.

Zebrowski, J., concurred.

**BOREN, P. J.**—I concur.

I write separately to emphasize that the Legislature has the prerogative to categorize the degrees of murder. It has done so in Penal Code section 189. As given, the trial court's jury instruction (CALJIC No. 8.26) runs afoul of section 189. The People have urged that a "conspiracy murder" theory of liability permits such instruction. The People's conclusion is baffling.

The prosecuting attorney in discussing this instruction told the trial judge that "the conspiracy murder theory under 8.26 . . . requires a finding of first-degree murder." The trial court apparently adopted the prosecution's conclusion. However, it does not correctly state the law of California.

"If two or more persons conspire . . . [¶] . . . to commit any . . . . felony" they commit the crime of conspiracy and are "punishable in the same manner and to the same extent as is provided for the punishment of that felony." (Pen. Code, § 182.) For that reason a person who conspires to commit felonious assault shall be punished to the same extent that person would have been if that person had committed (or aided and abetted) such an assault. It follows that a conspiracy to assault that results in a homicide results also in the same punishment as that attending a nonconspiratorial assault that leads to a homicide. Thus, I concur wholly in the reasoning stated in Justice Nott's opinion.

The confusion the prosecution generated in the trial court probably stems from case law concerning "conspiracy murder" where the conspiracy has as its objective murder itself. The California Supreme Court has ruled that where the objective of conspiracy is murder it is always first degree murder. (*People* v. *Cortez* (1998) 18 Cal.4th 1223, 1237-1238 [77 Cal.Rptr.2d 733, 960 P.2d 537].) It appears likely that the prosecution here confused the term "conspiracy murder" with "conspiracy *to* murder."

Throughout the history of Penal Code section 189, defendants have from time to time advanced the argument that in order for the felony-murder provisions of section 189 to apply (i.e., that "[a]ll murder . . . which is committed in the perpetration of, or attempt to perpetrate," certain enumerated felonies[not including felonious assault] "is murder of the first degree")

a "murder" must have first been committed. It is within that context that the Supreme Court as early as 1889 stated: "[W]here the killing is the result of the commission or the attempt to commit a felony, whether it be one of those named in section 189 of the code or not, the law attaches the felonious intent accompanying the crime contemplated to the act of killing, and constitutes it murder." (*People* v. *Olsen* (1889) 80 Cal. 122, 126 [22 P. 125].) That language does not authorize imposition of first degree felony-murder status against a conspiracy to assault that results in a killing. The Supreme Court's holding was merely to the effect that a killing resulting from the commission of any inherently dangerous felony constitutes a "murder" for purpose of applying section 189. Section 189 nevertheless controls the degree assigned to such a murder.

Therefore, because assault is not among the felonies enumerated in Penal Code section 189, assault is not a predicate felony that elevates a killing to *first degree* murder. Thus, whether the defendant is liable as a principal, as an aider and abettor, or as a conspirator, he or she cannot be found guilty under felony-murder principles of first degree murder where the target crime is a felonious assault that results in death.

Respondent's petition for review by the Supreme Court was denied November 17, 1999.