Filed 3/8/23  P. v. Pswatai CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D080367 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FBA800772) |
| DUDZAI PROSPER PSWATAI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino, John P. Vander Feer, Judge.  Reversed and remanded with instructions.

Valerie G. Wass for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Lynne G. McGinnis, and Tami Falkenstein Hennick, Deputy Attorneys General for Plaintiff and Respondent.

# I

## INTRODUCTION

In 2009, a jury found Dudzai Prosper Pswatai guilty of the first degree murder of Robert Mastrangelo (Pen. Code, § 187, subd. (a)).[1]  The jury returned a true finding on an allegation that, in the commission of the murder, Pswatai personally and intentionally discharged a firearm and proximately caused Mastrangelo's death (§ 12022.53, subd. (d)).

Based on recent changes to our state's murder laws, Pswatai petitioned the trial court for vacatur of his murder conviction and resentencing under section 1172.6.  The court summarily denied the resentencing petition without issuing an order to show cause, reasoning that Pswatai's record of conviction precluded him from obtaining relief as a matter of law.

Contrary to the trial court, we conclude Pswatai's record of conviction does not foreclose relief as a matter of law.  We reach this conclusion because the jury may have found Pswatai guilty of natural and probable consequences murder without finding that he harbored malice aforethought, which is no longer a permissible theory of murder liability under the recent amendments to the state's murder laws.  Because we cannot rule out the possibility that Pswatai may have been convicted of murder under a theory of liability that is no longer legally valid, we reverse the summary denial order and remand the matter with directions that the trial court issue an order to show cause and conduct such further proceedings as are required by section 1172.6.

---

[1]     Further undesignated statutory references are to the Penal Code.

II

BACKGROUND[2]

A. *Factual Background*

On June 10, 2008, Robert Mastrangelo asked his friend to meet with Jeffrey "Slutter" Berrouet to buy ecstasy pills. (*People v. Pswatai* (Jan. 5, 2012, D056851) [nonpub. opn.].) The friend met with Berrouet and made the purchase, but discovered the supposed ecstasy pills were fake. (*Ibid.*) The friend met with Berrouet a second time and Berrouet returned the money from the sale of the fake ecstasy pills. (*Ibid.*)

A few days later, Mastrangelo's body was discovered in a roadside ditch in Barstow. (*Pswatai, supra*, D056851.) He was wearing only his underwear and his ankles were bound with a black cloth. (*Ibid.*) He had been shot six times in the head, neck, and torso. (*Ibid.*) Soon after, law enforcement arrested Pswatai, who lived with Berrouet in the home of Celina Sanchez. (*Ibid.*)

In a post-arrest interview, Pswatai told detectives that Berrouet asked him to help " 'with this thing [Berrouet was] doing' by getting some rope and water." (*Pswatai, supra*, D056851.) He said he went into Sanchez's garage and saw Mastrangelo with Berrouet and three other men. (*Ibid.*) According to Pswatai, one of the men was trying to tie Mastrangelo's legs and he instructed Pswatai to help. (*Ibid.*) Pswatai denied shooting Mastrangelo, but said he gave Berrouet a rope and held Mastrangelo's legs while someone else tied him up. (*Ibid.*)

---

[2] Pswatai filed a request for judicial notice of the appellate record from the direct appeal of his judgment of conviction (case number D056851), which includes the pleadings, reporter's transcripts, verdicts, and jury instructions from his murder trial. We granted the unopposed request for judicial notice.

3

Prosecutors charged Pswatai by amended information with the first degree murder of Mastrangelo (§ 187, subd. (a); count 1); one count of kidnapping (§ 207, subd. (a); count 2); and one count of second degree robbery (§ 211; count 3); as well as a separate count of soliciting the murder of Sanchez, who testified at Pswatai's trial (§ 653f, subd. (b); count 4). For counts 1–3, the amended information alleged a principal personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (*id.*, subd. (c)), and personally and intentionally discharged a firearm causing great bodily injury and death to Mastrangelo (*id.*, subd. (d)).

The prosecution pursued multiple theories of murder liability against Pswatai, arguing he was guilty: (1) as a direct perpetrator of deliberate and premeditated murder; (2) as a direct aider and abettor of deliberate and premeditated murder; (3) of kidnapping and/or robbery felony murder; (4) as an aider and abettor of kidnapping and/or robbery felony murder; (5) as a member of an uncharged conspiracy (with Berrouet and/or Sanchez) to commit murder; and (6) as a member of an uncharged conspiracy (with Berrouet and/or Sanchez) to commit a kidnapping and/or a robbery, the natural and probable consequence of which was murder. The trial court instructed the jury on each of these theories of vicarious liability and murder liability.[3]

Of particular relevance here, the court instructed the jury on the natural and probable consequences doctrine in cases of conspiracy. It instructed the jury: "A member of a conspiracy is criminally responsible for

---

[3] The court instructed the jury on aiding and abetting principles (CALCRIM Nos. 400 and 401), uncharged conspiracies and liability for coconspirators' acts (CALCRIM Nos. 416 and 417), malice murder (CALCRIM No. 520), and felony murder (CALCRIM Nos. 540A and 540B).

the crimes that he or she conspires to commit, no matter which member of the conspiracy commits the crime. [¶] *A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy.* … [¶] To prove that the defendant is guilty of the crime[s] charged in Count[s] 1, 2 or 3, the People must prove that: [¶] 1. The defendant conspired to commit one of the following crimes: Murder, Robbery or Kidnapping; [¶] 2. A member of the conspiracy committed Murder, Robbery or Kidnapping to further the conspiracy; [¶] AND [¶] 3. *Murder, Robbery or Kidnapping (were) natural and probable consequence[s] of the common plan or design of the crime that the defendant conspired to commit.*"  (Emphasis added.)

Consistent with these instructions, the prosecution argued to the jury that it could find Pswatai guilty of murder as a member of an uncharged conspiracy.  Specifically, after discussing malice murder and felony murder, the prosecution argued:  "Now, to make it even a little more fun, I'm giving you yet another way that you can find him guilty of murder.  Conspiracy.  … Conspiracy, now, is being part of the plan.  He doesn't have to take any direct steps towards the murder, but he's still guilty if he conspires to commit any of these three [target crimes].  If he conspires, comes up with this plan to rob, kidnap or murder Robert Mastrangelo, that's it. [¶] … [¶] …  Obviously someone did an act.  A couple of people did acts, because Robert is dead. [¶] So what do you have to do?  Like I said before, conspire to commit any one of these crimes.  Any one.  You do an act, and the result is something that makes sense.  Well, you pull the trigger, the fact someone dies after you pull the trigger, that makes sense.  That's a reasonable, probable consequence of

5

your action. You tie someone up and kick them in the head, yeah, they're going to bleed. It's a reasonable, probable consequence of what you did."

After deliberations, the jury found Pswatai guilty of the first degree murder, kidnapping, and second degree robbery charges (counts 1–3), and not guilty of the solicitation of murder charge (count 4). For each conviction, the jury found that Pswatai personally and intentionally discharged a firearm, which proximately caused great bodily injury and death to Mastrangelo, within the meaning of section 12022.53, subdivision (d).[4] The verdict form for the murder charge did not specify which theory or theories of liability the jury relied on to find Pswatai guilty of the crime.

The trial court sentenced Pswatai to 109 years to life in state prison. Our court affirmed the judgment (*Pswatai, supra*, D056851), and the Supreme Court denied review.

B. *Procedural Background*

After Pswatai's judgment became final, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) went into effect. Senate Bill No. 1437 limited the scope of the felony murder rule and abolished the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015, §§ 2–3; see *People v. Gentile* (2020) 10 Cal.5th 830, 839, 842.) It also enacted former section 1170.95, now codified in section 1172.6, which established a

---

[4]    For each conviction, the jury also returned true findings on allegations that Pswatai personally used a firearm (§ 12022.53, subd. (b)), and that he personally and intentionally discharged a firearm (*Id*., subd. (c)).

6

procedure for convicted murderers who could not be convicted under the law, as amended, to seek retroactive relief.[5]  (Stats. 2018, ch. 1015, § 4.)

Following the effective date of Senate Bill No. 1437, Pswatai filed a petition to have his murder conviction vacated and to be resentenced under section 1172.6.  He put checkmarks next to statements on the petition averring:  (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of the legislative changes implemented by Senate Bill No. 1437.  After the resentencing petition was filed, the trial court appointed counsel for Pswatai.

The People, represented by the district attorney, opposed Pswatai's resentencing petition.  They argued the court should deny the petition because the first degree murder verdict and "the testimony" from the trial established that Pswatai was "the actual killer," a purported fact that, according to the People, rendered Pswatai ineligible for relief.

The trial court summarily denied the resentencing petition without issuing an order to show cause or setting an evidentiary hearing.  The court found Pswatai was not entitled to relief, as a matter of law, because his murder conviction and the true finding on the firearm enhancement under section 12022.53, subdivision (d), conclusively established he was "the actual killer."

---

[5]     Assembly Bill No. 200 (2021–2022 Reg. Sess.) renumbered section 1170.95 as section 1172.6.  (See Stats. 2022, ch. 58, § 10.)  For purposes of this opinion, we will refer to this statutory provision as section 1172.6.

## DISCUSSION

The question presented in this appeal is whether Pswatai's record of conviction—specifically, the jury's true finding on the section 12022.53, subdivision (d), firearm enhancement—bars him from obtaining relief under section 1172.6 as a matter of law. We conclude the record of conviction does not preclude Pswatai from obtaining relief as a matter of law.

A. *Summary of Senate Bill No. 1437*

"Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions. [Citations.] First, Senate Bill No. 1437 amended section 189 so that '[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life.'' [Citations.] Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where [he or] she acted 'with malice aforethought,' and '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 122.)

"Senate Bill [No.] 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citation.] Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of

changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 (§ 1172.6, subd. (a)(3))." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*), fn. omitted.)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong, supra*, 13 Cal.5th at p. 708.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) As the Supreme Court has explained, "the 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

Unless the parties stipulate that the petitioner is eligible for relief, the trial court must then "hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437." (*Strong, supra*, 13 Cal.5th at p. 709.) " 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' " (*Ibid.*, quoting § 1172.6, subd. (d)(3).)

9

B. *The Trial Court Erred in Summarily Denying the Resentencing Petition*

As noted, the trial court summarily denied Pswatai's petition for resentencing on the basis that his murder conviction and the true finding on the section 12022.53, subdivision (d), firearm enhancement rendered him ineligible for resentencing as a matter of law. Because the jury might have convicted Pswatai of natural and probable consequences murder without finding beyond a reasonable doubt that he acted with malice aforethought—a theory of murder liability that is no longer legally permissible—we disagree with the trial court's conclusion.

" 'The natural and probable consequences doctrine was recognized at common law and is firmly entrenched in California law as a theory of criminal liability.' " (*People v. Superior Court* (*Ferraro*) (2020) 51 Cal.App.5th 896, 904–905.) The natural and probable consequences doctrine provides that " ' " '[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.' " ' " (*Id.* at p. 905.)

Although the natural and probable consequences doctrine applies most commonly when a defendant directly aids and abets a target offense, it "applies with equal force to cases involving the vicarious liability of conspirators for a crime committed in furtherance of the conspiracy." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 487; see *People v. Zielesch* (2009) 179 Cal.App.4th 731, 739 (*Zielesch*) ["The law has been settled for more than a century that each member of a conspiracy is criminally responsible for the acts of fellow conspirators committed in furtherance of, and which follow as a natural and probable consequence of, the conspiracy, even though such acts were not intended by the conspirators as a part of their common unlawful

10

design."].)  In this context, "[t]he question whether an unplanned crime is a natural and probable consequence of a conspiracy to commit the intended crime 'is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, [the unplanned crime] was *reasonably* foreseeable.' " (*Zielesch*, at p. 739.)  "Whether the unplanned act was a 'reasonably foreseeable consequence' of the conspiracy must be 'evaluated under all the factual circumstances of the individual case' and 'is a factual issue to be resolved by the jury' [citation], whose determination is conclusive if supported by substantial evidence." (*Ibid.*)

At the time the jury found Pswatai guilty of murder, our state permitted a member of a conspiracy to be convicted of the crime of murder pursuant to the natural and probable consequences doctrine, even in the absence of any finding that the defendant acted with malice.  (See, e.g., *Zielesch, supra*, 179 Cal.App.4th pp. 741–742 [affirming murder conviction against conspirator under natural and probable consequences doctrine]; *People v. Maciel* (1987) 199 Cal.App.3d 1042, 1048 ["Each defendant, as an active participant in the conspiracy to assault the occupants of the car, is liable for the murder of [the victim], a natural and probable consequence of their violent attack with deadly weapons."].)  In accordance with the law in effect at the time, the trial court instructed the jury it could convict Pswatai of murder, as a member of a conspiracy, pursuant to the natural and probable consequences doctrine.[6]

---

[6]     Case law issued subsequent to Pswatai's first degree murder conviction abolished first degree premeditated murder liability under the natural and probable consequences doctrine.  (*People v. Chiu* (2014) 59 Cal.4th 155 [aiding and abetting context]; *People v. Rivera* (2015) 234 Cal.App.4th 1350 [conspiracy context].)

However, after Pswatai was found guilty of murder, Senate Bill No. 1437 abolished the natural and probable consequences doctrine as applied to the crime of murder. Now, section 188 provides that, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.) Such malice may be express or implied. (*Id.*, subd. (a).) "In the case of express malice, the defendant must have intended to kill. [Citation.] Implied malice also involves a mental component, namely a ' "conscious disregard for the danger to life that the [defendant's] act poses." ' [Citation.] This requires ' "examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions." ' [Citation.] "It is not enough that a reasonable person would have been aware of the risk." ' " (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*).)

Because the prosecution advanced a theory of murder liability that is no longer viable under our state's amended murder statutes, and the trial court instructed the jury with the now-impermissible theory of murder liability, it is possible the jury relied solely on an invalid theory of liability to find Pswatai guilty of murder. And because the jury may have used a now-forbidden theory of liability to find Pswatai guilty of murder, we conclude the trial court erred in summarily denying the petition for resentencing.

In the trial court, and again on appeal, the People argue Pswatai is not entitled to resentencing, as a matter of law, because the jury found that he was Mastrangelo's actual killer. In particular, they rely on the fact the jury returned a true finding on the section 12022.53, subdivision (d), firearm sentencing enhancement. Because the jury returned a true finding on this firearm sentencing enhancement, the jury necessarily found that Pswatai

12

personally and intentionally discharged a firearm and proximately caused Mastrangelo's death.  (See § 12022.53, subd. (d).)  We agree with the People the jury's finding establishes that Pswatai fired the weapon that killed Mastrangelo.  However, that fact, standing alone, does not foreclose Pswatai from obtaining relief under section 1172.6, given that the jury might have convicted him of natural and probable consequences murder.

In non-felony murder contexts, a defendant—even an actual killer— cannot be convicted of murder unless he or she acts with malice aforethought. (§ 188, subd. (a)(3).)  The jury's finding that Pswatai personally fired the weapon that killed Mastrangelo does not establish, as a matter of law, that he acted with express malice—i.e., that he intended to kill Mastrangelo. (*Offley, supra*, 48 Cal.App.5th at p. 598 [section 12022.53, subdivision (d) is "a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death"]; see also *People v. Lucero* (2016) 246 Cal.App.4th 750, 759– 760.)  Nor does the jury's finding show that Pswatai necessarily acted with implied malice—i.e., that he consciously disregarded the danger to life posed by his acts.  Because the firearm sentencing enhancement finding does not conclusively establish that Pswatai acted with express or implied malice, it does not preclude him from obtaining resentencing relief as a matter of law.

The case of *Offley, supra*, 48 Cal.App.5th 588, is instructive.  There, the defendant and at least two other persons fired shots into a vehicle in a gang-related shooting, killing one of the occupants of the vehicle.  (*Id.* at p. 592.) Like the present case, the jury was instructed on the natural and probable consequences doctrine in cases of conspiracy.  (*Id.* at p. 593.)  Further, like the case at hand, the jury found the defendant guilty of murder and found he personally and intentionally discharged a firearm, proximately causing great

13

bodily injury and death to the victim, within the meaning of section 12022.53, subdivision (d). (*Ibid.*) After Senate Bill No. 1437 went into effect, the defendant filed a petition for resentencing, which the trial court summarily denied based on the firearm sentencing enhancement finding. (*Id.* at p. 594.)

The Court of Appeal reversed the summary denial order. (*Offley, supra,* 48 Cal.App.5th at p. 597.) It reasoned the finding on the section 12022.53, subdivision (d) enhancement did not foreclose relief, as a matter of law, because it did "not establish that the defendant acted with malice aforethought." (*Offley,* at p. 598.) Further, while other aspects of a defendant's record of conviction could preclude relief under different circumstances—for example, if the record showed the jury convicted the defendant on the basis of his or her own malice aforethought—the *Offley* court could not "rule out the possibility that the jury relied on the natural and probable consequences doctrine" when it found the defendant guilty of murder. (*Id.* at p. 599.) The jury may have found the defendant "intended to take part in a conspiracy to commit [one or more target offenses], with the aim of either injuring or merely frightening [the victim]." (*Ibid.*) It "could have then concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted him of murder without finding beyond a reasonable doubt that he acted with malice aforethought." (*Ibid.*)

Similarly, the jury in the present case might have found Pswatai guilty of murder under the natural and probable consequences doctrine without finding that he acted with malice aforethought. In particular, it could have found that Pswatai intended to take part in a conspiracy to commit one or more target offenses (kidnapping and/or robbery) and that he shot a firearm in furtherance of the target offense(s). The jury could then have found that Mastrangelo's death was the natural and probable consequence of the

14

conspiracy, which would have enabled it to find Pswatai guilty of murder without finding beyond a reasonable doubt that he acted with malice aforethought.  Given that we cannot exclude this possibility, we conclude the trial court erred in summarily denying Pswatai's petition for resentencing.

IV

DISPOSITION

The order summarily denying the petition for resentencing is reversed. The trial court is instructed to issue an order to show cause and conduct such further proceedings as are mandated by Penal Code section 1172.6.  We express no opinion regarding Pswatai's entitlement to relief during the further proceedings required by Penal Code section 1172.6.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


BUCHANAN, J.

15