Filed 1/15/16  P. v. Oregon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN CARLOS OREGON,<br><br>    Defendant and Appellant. | F068964<br><br>(Super. Ct. No. BF131156C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Darren Indermill and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## *INTRODUCTION*

Following a successful appeal from the first judgment entered in this case, appellant Juan Carlos Oregon was retried by a jury and convicted of two counts of attempted murder of a peace officer, two counts of assault with a semiautomatic firearm on a peace officer, and one count of receiving a stolen vehicle. On appeal, he challenges the propriety of the trial court's instructions to the jury on the prosecution's aiding-and-abetting and uncharged-conspiracy theories of criminal liability. He also contends that insufficient evidence supports his convictions of attempted murder and assault with a semiautomatic firearm. He further contends there is insufficient evidence to support the gang enhancements and gang-related firearm enhancements. In addition, he challenges the constitutionality of the applicable provision of the firearm enhancement statute. Finally, he claims his aggregate sentence and restitution and parole revocation restitution fines violate the due process and double jeopardy clauses in the California Constitution because they are greater than those imposed following his first trial and before his successful appeal. We agree with Oregon's last claim, which the People concede, and will modify his sentence accordingly. In all other respects, we will affirm the judgment.[1]

---

[1] Because the People have not raised any claims of forfeiture and we have addressed all of Oregon's contentions on the merits, it is unnecessary for us to reach his claim that, if any of his arguments were forfeited due to the lack of objections below, his trial counsel rendered ineffective assistance of counsel.

## *FACTUAL AND PROCEDURAL BACKGROUND*

On the night of February 20, 2010, Oregon, while driving a stolen car, suddenly sped away from two Bakersfield police officers as the officers were approaching the car on foot during a traffic stop. A high-speed car chase ensued, during which Oregon's backseat passenger, Jaime Vidal Aguirre, used a semiautomatic firearm to blow out the back windshield of the stolen car and fire shots at the officers' patrol car behind them.

When Oregon eventually stopped the stolen car in a densely populated area, Oregon, Aguirre, and Anthony Manuel Perez (the front seat passenger) got out and ran away. Police found a number of items near and inside the stolen car including: a black diaper bag which contained binoculars, three masks (two "Halloween masks" and a black ski mask), and a loaded, nine-millimeter semiautomatic handgun; a working police scanner "tuned into … the Bakersfield Police Department's Channel 1 radio traffic"; a key fob containing 11 shaved keys; cotton work gloves; a black hat with the letter "T" on it; a black T-shirt; a blue beanie cap; and a sock containing live .45-caliber bullets.

When Oregon was eventually apprehended on April 13, 2010, he was driving another stolen car, had in his possession a keyring with numerous car keys on it, and attempted to flee officers by foot, after he ran into a tree with the car. In a police interview, Oregon admitted he was the driver of the stolen car during the subject incident and that he had used the shaved keys found in that car to steal other cars.

In Oregon's first trial, which was severed from that of his codefendants, a jury convicted him of two counts of attempted premeditated murder of a peace officer (Pen. Code,[2] §§ 664, subds. (a) & (e), 187, 189; counts 1 & 2), two counts of assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2); counts 3 & 4), and one count each of being a felon in possession of a firearm (§ 12021, subd. (a)(1); count 5), receiving a stolen vehicle (§ 496d, subd. (a); count 8), and recklessly evading a peace

---

[2]  Further statutory references are to the Penal Code unless otherwise specified.

officer while operating a motor vehicle (Veh. Code, § 2800.2; count 9). The jury also found true the gang enhancement allegations in each count (§ 186.22, subd. (b)(1)), and the firearm enhancement allegations in counts 1 through 4 (§ 12022.53, subds. (c) & (e)(1)) After striking the prior prison term allegation in each count (§ 667.5, subd. (b)) on the People's motion, the trial court sentenced Oregon to an aggregate prison term of 79 years to life. The court also imposed various fines and fees, including a restitution fine of $200 (§ 1202.4, subd. (b)) and a parole revocation restitution fine of $200 (§ 1202.45).

Oregon appealed from the judgment. We reversed his convictions on all counts except for count 9 (reckless evasion) and remanded the case for retrial, after concluding that the admission of the codefendants' out-of-court statements violated Oregon's Sixth Amendment rights, and that the error was not harmless beyond a reasonable doubt. (*People v. Oregon* (June 25, 2013, F062593) [nonpub. opn.].)[3]

On remand, count 5 was dismissed on the People's motion and Oregon was retried on counts 1, 2, 3, 4, and 8. The jury found him guilty on all the counts and found all the special allegations to be true. The trial court found the original prior prison term allegations in each count to be true and sentenced Oregon to an aggregate prison term of 80 years to life and imposed various fines and fees, including a restitution fine of $280 and a parole revocation fine of $280.

## *DISCUSSION*

### I.    Instructional error

Oregon claims a number of prejudicial errors occurred as a result of the trial court's instructions on the uncharged-conspiracy and aiding-and-abetting theories of liability relied on by the prosecution. We find none of these claims to be persuasive.

---

**3**    At Oregon's request, we take judicial notice of our records in case No. F062593. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

4.

*A.    CALJIC No. 3.02*

Oregon first contends the trial court presented the jury with an invalid theory of liability when it gave, over the defense's objection, a modified version of CALJIC No. 3.02, which instructed the jury that "[o]ne who either *commits* or aids and abets another in the commission of crimes is not only guilty of those crimes, but is also guilty of any other crime committed by the principal which is a natural and probable consequences of the crimes originally *committed* or aided and abetted." (Italics added.)[4]

Oregon argues that the modified version of CALJIC No. 3.02 given here is erroneous because a defendant can only be liable under the natural and probable consequences doctrine if he *aids and abets* another person in committing a target offense, not if he *commits* the target offense himself. He is mistaken. The perpetrator and the

---

[4]    In its entirety, the modified version of CALJIC No. 3.02 given in this case provided: "One who either *commits* or aids and abets another in the commission of crimes is not only guilty of those crimes, but is also guilty of any other crime committed by the principal which is a natural and probable consequence of the crimes originally *committed* or aided and abetted. [¶] In order to find the defendant guilty of the crimes of Attempted Murder and Assault with a Semi-Automatic Firearm on a Police Officer, under this theory, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crimes of Reckless Evading, Permitting Someone to shoot from a Vehicle, or Shooting at an Occupied Motor Vehicle, were committed; [¶] 2. That the defendant either *perpetrated* or aided and abetted those crimes; [¶] 3. That a co-principal in those crimes committed the crimes of Attempted Murder or Assault with a Semi-Automatic Firearm on a Police Officer; and [¶] 4. The crimes of Attempted Murder; willful, deliberate and premeditated attempted murder, or Assault with a Semi-Automatic Firearm on a Police Officer were a natural and probable consequence of the commission of the crimes of Reckless Evading, Permitting Someone to shoot from a Vehicle, or shooting at an Occupied Motor Vehicle. [¶] In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen. [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant *committed* or aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant *committed* or aided and abetted the commission of an identified and defined target crime and that the crime of Attempted Murder or Assault with a Semi-Automatic Firearm on a Police Officer was a natural and probable consequence of the commission of that target crime." (Some italics omitted and added.)

aider and abettor "are *equally* liable for the natural and foreseeable consequence of their crime. Both the perpetrator and the aider and abettor are principals, and all principals are liable for the natural and reasonably foreseeable consequences of their crimes...." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1376 (*Olguin*); see also *People v. Culuko* (2000) 78 Cal.App.4th 307, 329–330.) Therefore, the trial court did not err in instructing the jury that Oregon could be liable for the non-target offenses of attempted murder and assault with a firearm on a peace officer under the natural and probable consequences doctrine if he directly perpetrated or aided and abetted another person in committing one of the alleged target offenses (i.e., recklessly evading a peace officer, permitting someone to shoot from a vehicle, or shooting at an occupied motor vehicle).

### B.     Instructions on uncharged-conspiracy theory of liability

Oregon next contends the trial court erred in instructing the jury it could find him guilty of attempted murder as a natural and probable consequence of entering into a conspiracy to commit assault or robbery. The court, over the defense's objection instructed on this theory pursuant to CALJIC No. 6.10.5 (conspiracy and overt act not pleaded as a charged crime)[5] and CALJIC No. 6.11 (conspiracy—joint responsibility).[6]

---

[5]     CALJIC No. 6.10.5 provided: "A conspiracy is an agreement between two or more persons with the specific intent to agree to commit the crimes of Robbery or Assault and with the further specific intent to commit those crime[s], followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime, but is not charged as such in this case. [¶] In order to find a defendant to be a member of a conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the following overt acts to accomplish robbery or assault: [¶] 1. Unlawfully acquired a blue Honda Civic, [¶] 2. Removed the license plates from it. [¶] 3. Acquired three face masks, [¶] 4. Acquired one radio scanner capable of monitoring police channels, [¶] 5. Tuned the above scanner to monitor the Bakersfield Police Departments channel one. [¶] 6. Acquired one pair of binoculars, [¶] 7. Acquired multiple pairs of gloves, [¶] 8. Acquired at least one 9mm semi-automatic handgun, [¶] 9. Put items listed in 3, 4, 6, 7, and 8 into the Honda Civic. [¶] 10. Drove the Honda Civic in the direction of Varrio Baker territory, [¶] 11. Fled from police in a high-speed pursuit, [¶] 12. Fired multiple rounds at the pursuing officers; [¶] AND [¶] 13. At least one of these overt acts was committed in California. [¶] It is not necessary to such a finding as to any particular defendant that defendant personally committed the overt act, if he was one of the conspirators when the alleged overt act

6.

Relying on *People v. Baker* (1999) 74 Cal.App.4th 243 (*Baker*), Oregon contends the trial court's conspiracy instructions presented the jury with an invalid theory of attempted felony murder. In *Baker*, the defendants were charged with murder, attempted murder, assault with a deadly weapon, conspiracy to commit assault with a deadly weapon, and residential burglary. (*Id.* at p. 247.) The defendants claimed the instruction presented to the jury on the theory of conspiracy felony murder was legally insufficient, as assault with a deadly weapon was not one of the listed felonies in section 189 that governs the felony murder rule. (*Baker*, at p. 248.) The court in *Baker* agreed and reversed the judgment. (*Ibid.*) Oregon argues: "Section 189 does not list a murder committed in the perpetration of a conspiracy or attempted assault as the basis for first degree murder. Thus, there is no crime of attempted felony murder based upon a

was committed. [¶] The term 'overt act' means any step taken or act committed by one or more of the conspirators which goes beyond mere planning or agreement to commit a crime and which step or act is done in furtherance of the accomplishment of the object of the conspiracy. [¶] To be an 'overt act,' the step taken or act committed need not, in and of itself, constitute the crime or even an attempt to commit the crime which is the ultimate object of the conspiracy. Nor is it required that the step or act, in and of itself, be a criminal or unlawful act."

[6] CALJIC No. 6.11 stated: "Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy. [¶] The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators. [¶] A member of a conspiracy is not only guilty of the particular crime that, to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective. [¶] You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in Counts One through Four were perpetrated by a co-conspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy. [¶] In determining whether a consequence is 'natural and probable' you must apply an objective test based not on what the defendant actually intended but on what a person of reasonable and ordinary prudence would have expected would be likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural consequence' is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen."

conspiracy to commit an assault.  Additionally, in California, there is no crime of attempted felony murder."

*Baker* is inapposite.  The trial court's instructions here did not present the jury with a felony-murder theory of attempted murder but properly instructed the jury as to the natural and probable consequences doctrine under a valid conspiracy theory.  Under this theory and pursuant to CALJIC Nos. 6.10.5 and 6.11, the prosecution was required to establish that Oregon formed an agreement with Aguirre or Perez (or both) to commit robbery or assault, committed one of the enumerated overt acts, and that the attempted murder of a peace officer was the natural and probable consequence of the conspiracy itself.  The instructions were correct.  Under a conspiracy theory, each conspirator is responsible for everything done by his coconspirators, including the natural and probable consequences of the conspiracy.  (*People v. Zacarias* (2007) 157 Cal.App.4th 652, 657.)

We also reject Oregon's suggestion that the natural and probable consequences doctrine is inapplicable to attempted murder because the doctrine does not require proof of specific intent to kill.  Although attempted murder requires express malice, i.e. specific intent to kill, not implied malice (*People v. Collie* (1981) 30 Cal.3d 43, 62), our courts have held that the natural and probable consequences doctrine in aiding and abetting situations can support a conviction of attempted murder (see *People v. Prettyman* (1996) 14 Cal.4th 248, 262–263).  The specific intent necessary for conviction of an aider and abettor is not "the specific intent to kill, but the intent to 'encourage and bring about conduct that is criminal.'"  (*Olguin, supra,* 31 Cal.App.4th at p. 1379 [rejecting implied malice arguments for aider and abettor liability].)

As discussed in *People v. Medina* (2009) 46 Cal.4th 913, it is quite foreseeable that a gang-related assault will result in murder or attempted murder, even if the aider and abettor does not know the principal is armed.  "'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and

8.

probable consequence of the intended crime. The latter question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable.'" (*Id.* at p. 920, italics omitted.)

Oregon cites no published case holding that the natural and probable consequences doctrine is inapplicable to attempted murder. There are, however, "a number of California cases which hold murder or attempted murder can be a natural and probable consequence of [aiding and abetting a] robbery." (*People v. Cummins* (2005) 127 Cal.App.4th 667, 677.) We similarly conclude that the jury was correctly instructed that Oregon could be found guilty of attempted murder under a conspiracy theory of liability if it found the natural and probable consequence of the uncharged conspiracy to commit robbery or assault was the attempted murder of a peace officer.

### C.     *Evidence of uncharged conspiracy to commit robbery or assault*

Oregon contends there is insufficient evidence to support the theory that he was guilty of the crimes of attempted murder of a peace officer and assault with a deadly weapon on a peace officer based on a conspiracy to commit robbery or assault because there was no evidence he entered into such conspiracy. Accordingly, he argues the trial court should not have instructed the jury on his theory and committed prejudicial error by doing so.

"[A] trial court in a criminal case is required—with or without a request—to give correct jury instructions on the general principles of law relevant to issues raised by the evidence." (*People v. Mutuma* (2006) 144 Cal.App.4th 635, 640.)

A conspiracy may be found where two or more people agree to commit a crime, they specifically intend both to agree and to commit the crime, and one of them performs an overt act in furtherance of their agreement. (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1603, disapproved on another ground in *People v. Palmer* (2001) 24 Cal.4th 856.) The agreement may be proved by circumstantial evidence, without showing a meeting or an express or formal agreement. (*People v. Zamora* (1976) 18 Cal.3d 538, 559.) The

9.

agreement may be inferred from the defendants' conduct in mutually carrying out an illegal purpose, the nature of the acts committed, the relationship of the parties, and the interests of the alleged conspirators. (*People v. Superior Court (Quinteros)* (1993) 13 Cal.App.4th 12, 20.) An inference of a conspiracy may also be supported by, though not exclusively based on, the defendants' membership in the same gang. (*Ibid.*) "[E]vidence of conspiracy may be admitted even if the defendant is not charged with the crime of conspiracy." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1134 (*Rodrigues*).)

"Once there is proof of the existence of the conspiracy there is no error in instructing the jury on the law of conspiracy." (*Rodrigues*, *supra*, 8 Cal.4th at p. 1134.) "To determine whether there was sufficient proof of a conspiracy in this case, we apply the following rules. 'Although the existence of the conspiracy must be shown by independent proof [citation], *the showing need only be prima facie evidence of the conspiracy*. [Citation.] The prima facie showing may be circumstantial [citation], and may be by means of any competent evidence which tends to show that a conspiracy existed. [Citation.]' (*People v. Jourdain* [(1980) 111 Cal.App.3d 396,] 405.)" (*Id.,* at p. 1134, italics added.) "Evidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.'" (*Id.* at p. 1135.)

The evidence here was sufficient to support instructing on conspiracy to commit robbery or assault as a theory of liability. As discussed in greater detail below, the prosecutor's gang expert testified that Oregon, Aguirre, and Perez were active members of the same gang (i.e., the Varrio Bakers) and that robbery and assault with a deadly weapon were among the gang's primary activities. Oregon and the codefendants were travelling together in a stolen car inside which was found, among other things, a functioning police scanner tuned to one of the police department's channels. After the

10.

three men abandoned the stolen car, a black diaper bag containing *three* masks, binoculars, and a loaded, nine-millimeter semiautomatic firearm was found near the car. The foregoing circumstances, considered together, were sufficient to make a prima facie showing of a conspiracy to commit robbery or assault and, therefore, the trial court did not err by instructing on this theory.

## II.    Sufficiency of the evidence to support Oregon's convictions of attempted murder and assault with a semiautomatic firearm on a peace officer

Next, Oregon contends there was insufficient evidence to support his convictions of attempted murder of a peace officer and assault upon a peace officer with a semiautomatic firearm under any of the prosecution's three theories of liability; i.e., direct aiding and abetting, natural and probable consequences doctrine of aiding and abetting, and uncharged conspiracy to commit robbery or assault.  We disagree.

We review a claim of insufficient evidence by determining whether, viewing the whole record in the light most favorable to the prosecution, the record discloses substantial evidence—evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  (*People v. Osband* (1996) 13 Cal.4th 622, 690.)  "'We "'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"'"  (*Ibid.*)

"In making our determination, we do not reweigh the evidence ….  We simply consider whether ""'*any* rational trier of fact could have found the essential elements of [each conviction challenged] beyond a reasonable doubt.'" [Citations.]' [Citation.] Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the [jury's] verdict[s,]' we will not reverse." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790, second bracketed insertion added.)

Oregon first contends there was insufficient evidence to support his convictions on a direct aiding and abetting theory of liability.  He argues that the evidence he was

11.

driving a stolen car and possessed shaved keys used to steal other cars at the time of the traffic stop suggested he had "reason—that was independent of the interests of Aguirre and Perez—to try and evade the police." However, Oregon claims there was no evidence he had the requisite intent to kill to find him guilty of attempted murder on an aiding and abetting theory. In fact, Oregon asserts, "his act of continuing to accelerate the vehicle while his backseat passenger was shooting at the officers demonstrates a *lack* of an intent to kill. If [he] possessed the intent to kill he would not have been attempting to distance his vehicle from [the] officers' vehicle while his backseat passenger was shooting at the patrol vehicle." (Italics added.)

In essence, Oregon seems to be arguing that his conduct in driving the stolen car to escape the police officers was factually incompatible with a finding he was simultaneously trying to help Aguirre shoot and kill the officers or otherwise aiding and abetting the shooting offenses in this case. However, the two were not mutually exclusive and a rational juror could infer from all the circumstances that Oregon was attempting to avoid capture by the police officers *while at the same time* intentionally facilitating the commission of the shooting offenses and that he shared the shooter's intent to kill.

Contradicting Oregon's suggestion that he was acting completely independently of his codefendants during the crimes, there was evidence that Oregon, Aguirre and Perez conferred or communicated with one another immediately before Oregon sped away from the police officers. One of the officers testified, that as they were walking up to the car, he observed a lot of movement among *all three occupants* of the car. There was also evidence that, near the end of the car chase, Oregon drove onto a partially paved alley where Aguirre fired additional shots at the patrol car. According to the officers' testimony, visibility in the alley was low partly because the lights on the stolen car were turned off after it entered the alley. A reasonable factfinder could have inferred from all the circumstances that Oregon intentionally shut off the lights on the stolen car to help

12.

Aguirre to better see and take aim at the officers behind them, while at the same time facilitating their escape by continuing to drive at a high rate of speed. Although there was also evidence supporting the other theories of liability presented to the jury in this case, in light of our conclusion that substantial evidence supports Oregon's convictions on at least one theory, it is unnecessary to reach his sufficiency of the evidence challenge to the other two.

## III. Sufficiency of the evidence to support the gang and gang-related firearm enhancements

Oregon contends there was insufficient evidence to support the gang enhancements (§ 186.22, subd. (b))[7] and gang-related firearm enhancements (§ 12022.53, subd. (e)).[8] Specifically, he claims the evidence was insufficient to show he committed the charged offenses with the specific intent to assist, further, or promote criminal conduct by gang members. We disagree.

### A. *Background*

Bakersfield Police Sergeant Brent Stratton testified as a gang expert and described the Varrio Bakers, which he identified as a southern (or Sureño) Hispanic criminal street gang in Bakersfield. The primary activities of the Varrio Bakers gang include murder, assault with a deadly weapon, possession of firearms, possession of stolen vehicles, burglary, carjacking, and robbery.

---

[7]     Section 186.22, subdivision (b)(1), states: "[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows .…"

[8]     Section 12022.53 provides: "(e)(1) The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d) .…"

13.

Stratton opined that Oregon and the codefendants were active members of the Varrio Bakers gang and explained the bases for his opinion. In support of his opinion regarding Oregon's gang membership, Stratton described Oregon's numerous contacts with law enforcement between August 2004 and April 2013.

On August 5, 2004, and, again, on October 14, 2006, Oregon was contacted within Varrio Bakers territory.

On April 27, 2007, during a firearm possession investigation, Oregon was contacted in the company of the Varrio Bakers gang member who was ultimately arrested for the crime.

On July 20, 2008, Oregon was arrested for vehicle burglary and was found in the company of a Varrio Bakers gang member at the time of his arrest. Vehicle burglary is one of the primary activities of the gang.

On March 30, 2009, officers made contact with Oregon when responding to a citizen calling that there had been a gang fight and providing a vehicle description. When officers stopped the vehicle, Oregon was inside it.

On April 5, 2009, Oregon was arrested for charges related to automobile theft, which is one of the primary activities of the Varrio Bakers gang. At the time of his arrest, Oregon was wearing a hat with the letters KC on the front, which is an article of clothing often worn by Varrio Bakers and southern gang members.

On January 24, 2010, Oregon and two other active Varrio Bakers members—Jaime Aguirre, Oregon's codefendant in the instant case, and Joey Gonzales—were identified at the perpetrators of a home invasion-style robbery where shots were fired at the victim. The crime was also committed in Varrio Baker territory.

On February 4, 2010, Oregon was arrested for grand theft auto.

On April 13, 2010, at the time of his arrest for the current offenses, Oregon was driving a stolen vehicle.

14.

Following Stratton's description of Oregon's previous contacts with law enforcement, Stratton summarized the bases for his opinion that Oregon was an active member of the Varrio Bakers gang as follows:

> "The fact that he's been contacted with Varrio Bakers gang members. He's been contacted in Varrio Bakers territory. He's been arrested for crimes that, in my opinion, are the primary activities committed by Varrio Bakers gang members. He's been arrested in the company of Varrio Bakers gang members, committing primary activities. So based on all those factors, it's my opinion that he is a Varrio Bakers gang member or was at least at the time of this offense."

After being presented with a hypothetical based on the February 20, 2010, incident, Stratton rendered the following opinions:

> "My opinion is that, based on the totality of the circumstances of everything you have advised in that hypothetical, that that crime, hypothetically, would be done in association with and for the benefit of the Varrio Bakers criminal street gang. [¶] … [¶]
>
> "I based it on my experience as a gang investigator. And the things that I look at at this point would be the type of crimes that are in your hypothetical, the stolen vehicle, the firearms possession, the shooting, the area in which these crimes occur, as well as the presence of the gang members themselves. [¶] … [¶]
>
> "In my opinion, crimes like this enhance not only the individual gang member's reputation for lawlessness and crime but the entire gang as a whole, that their reputations are enhanced not only amongst other gang members but amongst citizens as a whole. I believe that, again, firearms possession are used to advance the interests of the gang as well as in that stolen vehicles are also used to advance the interests of the gang; that those are used hand-in-hand to benefit and to associate with the Varrio Bakers."

**B.** *Analysis*

Under existing case law, the fact that Oregon, a member of the Varrio Bakers gang, committed the current offenses in the company of two other members of the same gang, supports an inference that his crimes were gang related. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 412–413 [commission of crime accompanied by gang

members or associates supports inference defendant intended to benefit gang]; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 [nongang member's commission of crime in association with known gang member supports inference crime was gang related]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198–1199 [commission of crime with fellow gang members supports inference crime was committed in association with gang].)

In challenging this conclusion, Oregon argues that, although the evidence was sufficient to establish that Aguirre and Perez were both members of the Varrio Bakers gang, it was insufficient to establish that he was a member of the gang at the time of the offenses in February 2010. In this regard, Oregon notes that he "did not have any gang tattoos, he had not previously been convicted and ordered to register as a gang member, … no gang roll call sheets containing [his] name or photographs showing [him] making any gang signs were introduced" and "[t]here was no evidence [he] at any time had actually claimed membership in the gang."

Despite Oregon's contrary assertions, the gang expert's testimony regarding his numerous prior contacts with law enforcement was more than sufficient to support a finding that he was an active member of the Varrio Bakers gang at the time of the current offenses. As Oregon acknowledges, there was evidence that, on more than one occasion, he committed crimes with other members of the Varrio Bakers gang, including the commission of a robbery and shooting with Aguirre in January 2010, less than a month before the current incident, and that the crimes he committed were crimes constituting the gang's primary activities.

For reasons already discussed, we also reject Oregon's assertion that there was insufficient evidence he intended to aid and abet in the commission of the shooting offenses. That the evidence might also support an inference that Oregon had a personal motive in fleeing the police does not preclude, and the evidence supports, a finding he acted with the requisite intent to assist any criminal conduct of gang members.

## IV. Constitutionality of section 12022.53, subdivision (e)(1)

Oregon claims the firearm enhancement set forth in section 12022.53, subdivision (e)(1) violates equal protection because it punishes aiders and abettors of crimes committed for the benefit of street gangs more severely than aiders and abettors of crimes committed for the benefit of equally or more dangerous criminal associations such as "a racist hate group, an organized group of drug dealers" or "a terrorist organization."[9] We reject Oregon's claim and agree with the opposite conclusion reached by the appellate court in *People v. Hernandez* (2005) 134 Cal.App.4th 474, 481–482 (*Hernandez*).

As the *Hernandez* court explained, even assuming the groups Oregon identifies are similar enough to street gangs to trigger equal protection analysis, yet dissimilar enough to fall outside the broad definition of groups subject to enhanced punishment for street terrorism,[10] the Legislature is not required to target all analogous evils at once. (*Hernandez*, *supra*, 134 Cal.App.4th at p. 482.) "It may direct its attention '"to those classes of cases where the need is deemed the clearest"'" (*id.* at p. 482, fn. omitted), which the Legislature reasonably could determine was street gang violence (*ibid.*, citing

---

**9**    Section 12022.53, subdivision (d) states: "Notwithstanding any other provision of law, any person who, in the commission of [murder, attempted murder, or other crimes] personally and intentionally discharges a firearm and proximately causes ... death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Subdivision (c) similarly provides for a 20-year enhancement for discharge of a firearm without ensuing injuries or death. Subdivision (e)(1) extends these penalty enhancements to aiders and abettors as follows: "The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of section 186.22 [i.e., committed the offense for the benefit of a criminal street gang and with the specific intent to promote, further or assist in any criminal conduct by gang members]. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c) or (d)." Under section 31 a "principal" includes not only those persons who directly commit the act but also those who "aid and abet in its commission."

**10**    The *Hernandez* court observed that although the street terrorism legislation "was aimed at gangs such as the Bloods, the Crips and Southside Montebello (see § 186.21), a case could be made it also covers the White Knights of the Ku Klux Klan, the 'Mexican Mafia,' and Al-Qaeda." (*Hernandez*, *supra*, 134 Cal.App.4th at p. 481, fn. 40.)

homicide figures). Oregon contends the liberty interest at stake in avoiding a lengthy sentence enhancement requires review under the strict scrutiny standard, but a defendant "'does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.'" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*).) Thus, the Legislature "'is not prohibited by the equal protection clause from striking the evil where it is felt the most.'" (*Hernandez*, at p. 482, fn. omitted.)

Citing *People v. Olivas* (1976) 17 Cal.3d 236 (*Olivas*), Oregon argues that we should not adopt the rational basis test endorsed by *Hernandez*, *supra*, 134 Cal.App.4th 474. Oregon's argument is contrary to law. In *Wilkinson*, *supra*, 33 Cal.4th 821, the California Supreme Court held that the statutory scheme governing the offense of battery on a custodial officer did not violate equal protection principles. (*Id.* at pp. 838–841.) In reaching its conclusion, the court rejected the defendant's argument that strict scrutiny was required according to *Olivas*, a case involving an equal protection challenge to a statute which gave the trial court discretion to commit a defendant, convicted as an adult and between the ages of 16 and 21, to the California Youth Authority for a longer term than the defendant would have received if he or she had been sentenced as an adult. (See *Wilkinson*, at p. 837.)

The *Wilkinson* court concluded that *Olivas* did not stand for the proposition that strict scrutiny is required for an equal protection challenge on the grounds a penal statute authorizes different sentences for comparable offenses. The court explained that *Olivas* "'requires only that the boundaries between the adult and juvenile criminal justice systems be rigorously maintained. We do not read *Olivas* as requiring the courts to subject all criminal classifications to strict scrutiny requiring the showing of a compelling state interest therefor.' [Citation.] Other courts similarly have concluded that a broad reading of *Olivas*, as advocated by [appellant] here, would 'intrude[] too heavily on the police power and the Legislature's prerogative to set criminal justice policy.'" (*Wilkinson*, *supra*, 33 Cal.4th at pp. 837–838, first & second bracketed insertions added.)

Accordingly, the rational basis test applied in *Hernandez* is applicable and results in the conclusion that section 12022.53, subdivision (e)(1) does not violate equal protection principles.

## V.     Double jeopardy

Oregon contends, and the People concede, the trial court violated the state constitutional prohibition against double jeopardy by imposing a longer prison sentence and greater fines under sections 1202.4 and 1202.45 on resentencing.  We agree.

"When a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing."  (*People v. Hanson* (2000) 23 Cal.4th 355, 357.)  A statutorily mandated fine constitutes punishment and, therefore, comes within the double jeopardy principle prohibiting the imposition of harsher punishment following a defendant's successful appeal.  (*Ibid.*)

On resentencing, Oregon received a total prison term of 80 years to life, which was one year longer than the total term of 79 years to life previously imposed prior to his successful appeal.  We accept the remedy agreed upon by the parties of modifying the judgment by striking the one-year section 667.5, subdivision (b) enhancement imposed by the trial court, which will reduce his total prison term to 79 years to life.[11]  We will further modify the judgment by reducing the restitution and parole revocation restitution fines from $280 to $200 each.

---

[11]     As Oregon points out, and the People do not dispute, it appears the trial court improperly conducted a bench trial on the previously stricken prior prison term allegations on remand. However, we find it unnecessary to strike the court's true findings on the allegations because only one section 667.5, subdivision (b) enhancement, which we have ordered stricken, was imposed and the abstract of judgment states that stricken enhancements are otherwise not listed. Therefore, striking the court's true findings on enhancements not appearing in the abstract of judgment would make no practical difference.

### *DISPOSITION*

The judgment is modified by (1) striking the one-year Penal Code section 667.5, subdivision (b) enhancement, (2) reducing the Penal Code section 1202.4 restitution fine from $280 to $200, and (3) reducing the Penal Code section 1202.45 parole revocation restitution fine from $280 to $200, the latter of which is stayed pending Oregon's successful completion of parole. The trial court is directed to prepare an amended abstract of judgment that reflects Oregon's modified sentence and to forward a copy of that amended abstract of judgment to the appropriate authorities.

The judgment is affirmed in all other respects.

_____
HILL, P.J.

WE CONCUR:


_____
GOMES, J.


_____
POOCHIGIAN, J.